IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PHARM-OLAM INTERNATIONAL, LTD., )
)
      Plaintiff, )
)
  v. )   1:14CV1000
)
CYTOKINETICS, INC. and DATATRAK, )
INTERNATIONAL, INC., )
)
      Defendants. )

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This Declaratory Judgment action comes before the Court on Defendant Cytokinetics, Inc.'s ("Cytokinetics") Motion to Dismiss the Complaint, and in the alternative, Transfer [Doc. #15]. This case arises out of a contract dispute between Cytokinetics and Plaintiff Pharm-Olam International, Ltd. ("Pharm-Olam"), and a related contract dispute between Pharm-Olam and Datatrak International, Inc. ("Datatrak"). For the reasons that follow, the instant Motion should be granted and this declaratory judgment action should be dismissed in favor of the suit proceeding on the underlying claims in the United States District Court for the Northern District of California.

I.    FACTS, CLAIMS, AND PROCEDURAL HISTORY

According to the Complaint, Plaintiff Pharm-Olam is a Texas limited partnership with its principal place of business in Houston, Texas[1]; Cytokinetics is a Delaware corporation with its principal place of business in San Francisco, California; and Datatrak is an Ohio corporation with its principal place of business in Mayfield Heights, Ohio.

The Complaint alleges that Cytokinetics is in the business of researching, developing, and commercializing pharmaceutical products, that Pharm-Olam provides services in support of clinical studies for the pharmaceutical and bio-tech industries, and that Datatrak provides technology solutions for managing clinical solutions through its proprietary software suite, including, but not limited to, hosting, licensing, project management and consulting, user training and help desk services.  Based on the allegations, it appears that Cytokinetics develops pharmaceutical products and conducts clinical trials, and relies on contract research organizations such as Pharm-Olam to undertake certain work in support of the clinical studies.  Pharm-Olam, in turn, uses Datatrak software to manage aspects of the clinical studies.

In October 2011, Cytokinetics and Pharm-Olam entered into a Master Clinical Services Agreement ("MCSA") outlining the terms and conditions by which Cytokinetics could engage Pharm-Olam for individual studies or projects.  (Compl. [Doc. #1] ¶ 10.)  The MCSA states that it is to "be governed and construed in accordance with the laws of the

---

[1] The Complaint makes no allegations regarding the citizenship of Pharm-Olam's members.

2

State of Delaware, USA." (Id. ¶ 11)  In accordance with the MCSA, on July 16, 2012, Pharm-Olam and Cytokinetics entered into "WORK ORDER #2 DATA MANAGEMENT FOR PROTOCOL #: CY 4026" ("Work Order #2").  (Compl. [Doc. #1] ¶ 14).  Under Work Order #2, Pharm-Olam and Cytokinetics agreed that Pharm-Olam would use the Datatrak eClinical Electronic Data Capture ("EDC") platform for purposes of building, validating, and maintaining a study specific database for Cytokinetics' clinical study, referred to as CY 4026.  (Id. ¶ 15.)

In turn, in October 2012, Datatrak and Pharm-Olam entered into an Enterprise Statement of Work for the services Datatrak would provide for CY 4026.  (Id. ¶ 20.)  The Enterprise Statement of Work was entered into pursuant to a preexisting License Authorization and Master Services Agreement ("LAMSA") between Pharm-Olam and Datatrak.  (Id. ¶ 17.)  The LAMSA provided that it would be governed by and construed under the laws of the state of Ohio.  (Id. ¶ 18.)

The Complaint alleges that in April 2013, Datatrak provided a corrective patch to its EDC platform used for CY 4026; however, in June 2013, it was discovered that the patch created errors with respect to the randomization of approximately 58 patients involved in CY 4026.  (Id. ¶¶ 21-22.)  According to the Complaint, in August 2014, Cytokinetics made a written demand on Pharm-Olam in an amount exceeding $75,000 for alleged deficiencies in Pharm-Olam's performance of its obligations under Work Order #2 in connection with those randomization errors.  (Id. ¶ 25.)  Pharm-Olam's Complaint alleges that errors in the

3

randomization of patients in CY 4026 was caused entirely by the acts or omissions of Datatrak. (Id. ¶ 24.)

Pharm-Olam filed the instant action on November 28, 2014, seeking (1) a judicial declaration that certain limitation of liability provisions in the MCSA between it and Cytokinetics are enforceable and limit Pharm-Olam's liability for claims asserted by Cytokinetics; and (2) a judicial declaration that pursuant to the terms of the LAMSA, Datatrak must indemnify, defend, and hold harmless Pharm-Olam for the claims asserted against it by Cytokinetics. (See Compl. [Doc. #1] ¶¶ 42, 49.) Three days later, on December 1, 2014, Cytokinetics filed an action in the Northern District of California against Pharm-Olam for (1) fraudulent inducement; (2) breach of contract; and (3) negligence. See Cytokinetics, Inc. v. Pharm-Olam International, Ltd., No. 3:14-CV-05256-JCS (N.D. Cal.) (the "California Action.") Cytokinetics then filed the present Motion to Dismiss, contending that Pharm-Olam's claims against it should be dismissed for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. In the alternative, Cytokinetics requests that the Court transfer Pharm-Olam's claims against it to the Northern District of California pursuant to 28 U.S.C. § 1404(a). For its part, Pharm-Olam filed a Motion to Dismiss or Transfer in the California Action, but that Motion was denied and the action filed by Cytokinetics against Pharm-Olam has proceeded in the Northern District of California. In addition, Datatrak has recently requested and received permission to intervene

4

in that action, and Datatrak has filed a Notice [Doc. #36] in the present case joining in Cytokinetics' Motion to Dismiss or Transfer.

II. DISCUSSION

Cytokinetics contends that the instant action should be dismissed for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. As part of these jurisdictional contentions, Cytokinetics contends that the Court should decline to exercise jurisdiction over this declaratory judgment action because Pharm-Olam engaged in procedural fencing by filing the instant action. Cytokinetics contends in the alternative that this action should be transferred for convenience under 28 U.S.C. § 1404(a).

With respect to the question of whether the Court should decline to exercise jurisdiction over this declaratory judgment action, the Declaratory Judgment Act provides that where federal jurisdiction otherwise exists, the Court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) (footnote omitted). The Fourth Circuit has noted that the "district court should normally entertain a declaratory judgment action

when it finds that the declaratory relief sought: (1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998) (internal quotation marks omitted). However, a declaratory judgment action should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted," and district courts should also consider "whether the declaratory judgment action is being used merely as a device for 'procedural fencing' - that is, 'to provide another forum in a race for res judicata.'" Id. (internal quotation marks omitted).

Additional considerations apply "when the same parties pursue similar litigation in two separate federal courts," because as a general matter, "principles of comity dictate that the case should proceed where the action was first filed." Remington Arms Co. v. Alliant Techsystems, Inc., No. 1:03CV1051, 2004 WL 444574, at *2 (M.D.N.C. Feb. 25, 2004 (citing Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 n.2 (4th Cir. 1974)). "However, the Court may disregard the first-filed rule and give priority to the second suit filed where there has been a showing that a balance of convenience sways in favor of the second suit." SAS Inst., Inc. v. Practicingsmarter, Inc., 353 F. Supp. 2d 614, 617 (M.D.N.C. 2005). In addition, "[t]he fact that one suit is for a declaratory judgment does not change the general rule that the first-filed case should go forward," but "there is no absolute right to a

declaratory judgment, thus the determination as to whether to entertain a declaratory judgment action is a matter committed to the sound discretion of the district court." Id. (footnote omitted). In making this determination, "[c]ourts have applied an exception to the first-filed rule where 'special circumstances' exist, such as forum shopping, anticipatory filing, or bad faith filing." T2 Prods., LLC v. Advantus Corp., No. 3:14-CV-00193, 2014 WL 4181932, at *2 (W.D.N.C. Aug. 21, 2014). "In deciding whether 'special circumstances' counsel against following the first-filed rule, district courts in the Fourth Circuit have often looked to whether circumstances suggest a race to the courthouse." Elderberry of Weber City, LLC v. Living Centers-Southeast, Inc., No. 6:12-CV-52, 2013 WL 1164835, at *4 (W.D. Va. Mar. 20, 2013). Two factors, in particular, raise "red flags" that special circumstances exist that warrant a departure from a strict application of the first-to-file rule. See Remington Arms Co., Inc. v. Alliant Techsystems, Inc., 2004 WL 444574, at *3 (citing Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1007 (8th Cir. 1993)). "First, the fact that the first-filed action is for declaratory judgment merits a closer look, as such an action may be more indicative of a preemptive strike than a suit for damages or equitable relief." Id. (internal quotation marks omitted). "The second factor . . . is whether the party that filed first was on notice that a lawsuit was imminent." Id.

The instant action includes all of the hallmarks of procedural fencing or of a race to the courthouse. As noted above, Pharm-Olam filed this action on November 28, 2014, seeking only judicial declarations regarding interpretations of its contracts with Cytokinetics

and Datatrak. In connection with its instant Motion, Cytokinetics has attached email correspondence between Robert Blum, the President and CEO of Cytokinetics, and Sanjiv Suri, the Chief Executive Officer-United States, of Pharm-Olam. Those email exchanges reveal that, on Thursday, November 20, 2014, Mr. Blum wrote to Mr. Suri regarding discussions to resolve the instant dispute prior to court action. Mr. Blum, referencing an apparent request from a previous conversation between the two, attached a draft complaint and stated: "Please know that, unless we receive a serious and credible proposal from [Pharm-Olam] by the close of business Monday, December 2, [Cytokinetics] will proceed with filing the complaint." [Doc. #16-8 at 3.][2] The draft Complaint contemplated that Cytokinetics would file an action in the Northern District of California. Mr. Suri responded to Mr. Blum's email: "Thanks for your mail and the attachment. As discussed on our call I will contact you next Tuesday 25th [of] November, afternoon to update you on our discussions with our Insurance carrier." (Id.) However, Pharm-Olam proceeded to file the instant action in the Middle District of North Carolina on November 28, the Friday following the Thanksgiving holiday. Cytokinetics' action in the Northern District of California followed on the next business day, Monday, December 1. Pharm-Olam has made no effort to explain or excuse the chronology of those events. Under these circumstances, this procedural fencing counsels against exercising jurisdiction over this declaratory

---

[2] The email's reference to "Monday, December 2" appears to be a typographical error as December 2, 2014 fell on a Tuesday. Cytokinetics ultimately filed their Complaint in the Northern District of California on Monday, December 1, 2014.

8

judgment action, and the California Action "should be considered [the] 'action which has already been instituted' that should not be 'interfere[d] with.'" Remington Arms, 2004 WL 444574, at *7 (citing Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256-57 (4th Cir. 1996)) (alterations provided) (additional citations omitted).

In addition, in considering the balance of convenience between the two suits, the Court notes that although one of Pharm-Olam's employee's involved in negotiating the contract resides in North Carolina, other employees of Pharm-Olam reside elsewhere, and all of Cytokinetics relevant employees reside in the Northern District of California. Neither Pharm-Olam nor Cytokinetics is a North Carolina corporation or has its principal place of business in North Carolina, and the contract does not raise issues of North Carolina law or explicitly contemplate any action taken in North Carolina. In fact, as a whole, this forum's connections to the contract between Pharm-Olam and Cytokinetics appear minimal, giving no particular local interest in resolving this controversy. With the exception of the single individual residing in North Carolina, individuals apparently from California, Texas, and the United Kingdom negotiated a contract between a Texas limited partnership with its principal place of business in Houston, Texas, and a Delaware corporation with its principal place of business in California that contemplates the application of Delaware law.

Finally, allowing this suit to proceed would raise additional concerns regarding piecemeal litigation. In that regard, the Court notes that Cytokinetics filed its action in the Northern District of California bringing claims for (1) fraudulent inducement; (2) breach of

9

contract; and (3) negligence. Those claims are not included in the present suit.[3] In contrast, the present suit raises only limited contract interpretation issues. Accordingly, regardless of the resolution on Pharm-Olam's claim in this action, complete resolution of this matter would require further proceedings before a separate court. Moreover, with respect to the claim asserted by Pharm-Olam against Cytokinetics in the present case, that claim has now been asserted by Pharm-Olam as a defense in the California Action. Thus, it appears that all of the claims between Pharm-Olam and Cytokinetics can be resolved together in the California Action, but allowing the present claims to proceed in this Court would necessarily result in piecemeal litigation.

The Court also notes that as originally briefed, questions remained as to Pharm-Olam's separate declaratory judgment claim against Datatrak, which involved a contract between a Texas limited partnership with its principal place of business in Houston, Texas, and an Ohio corporation with its principal place of business in Mayfield Heights, Ohio, that is governed by the laws of Ohio and that relates to a duty to defend a claim otherwise pending in the Northern District of California. However, subsequent to the briefing on the instant Motion, the Northern District of California Court granted a motion by Datatrak to intervene in that action (see Doc. #35-1; California Action, Doc. #50), and Datatrak filed an

---

[3] In resolving a motion to dismiss or to transfer filed by Pharm-Olam in that case, the court in the Northern District of California determined that "venue for [Cytokinetic's] tort claims would not be proper in North Carolina." (Doc. #31-1 at 6.)

Intervenor Complaint against Pharm-Olam (see California Action, Doc. #51). In that Complaint, Datatrak seeks a declaratory judgment that it is not required to indemnify Pharm-Olam under the LAMSA for the events central to this action. (See id., at 5.) Furthermore, Pharm-Olam has filed an Answer to that Complaint with a counterclaim, (see id., Doc. #53), and Datatrak has filed an Answer to the counterclaim (see id., Doc. #55). Accordingly, all questions raised in the instant action are now proceeding in the Northern District of California, and Datatrak has now filed a Notice [Doc. #36] in the present case, joining in Cytokinetics' Motion to Dismiss or Transfer. Thus, in considering the concerns regarding piecemeal litigation, the Court finds that allowing the present declaratory judgment action to proceed in this Court would necessarily result in piecemeal litigation, but declining to exercise jurisdiction over this declaratory judgment action would allow all of the claims and defenses to be resolved together in the California Action.

In sum, the Court concludes in its discretion under 28 U.S.C. § 2201(a) that it is appropriate to decline to exercise jurisdiction over this declaratory judgment action, in light of the procedural fencing noted above, the nature of the claims presented, and the need to avoid piecemeal litigation. Allowing the present action to proceed would not serve a useful purpose in clarifying and settling the legal relations in issue, and will not afford relief from the controversy giving rise to the proceeding. Therefore, the Court recommends that the

11

Motion to Dismiss, filed by Cytokinetics and joined by Datatrak, be granted, and that this action be dismissed in favor of the California Action.[4]

III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendant Cytokinetics, Inc.'s Motion to Dismiss the Complaint, and in the alternative, Transfer [Doc. #15], in which Defendant Datatrak International, Inc. has joined [Doc. #36], be granted and that this action be dismissed.

This, the 24th day of August, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[4] Given this conclusion, the Court need not address Cytokinetics' separate arguments regarding subject matter jurisdiction, personal jurisdiction, and venue.